**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SUSAN BAIN, individually and as the
personal representative of THE
ESTATE OF JEFFREY BAIN,
Deceased, and CHRIS BAIN,
individually,

       Plaintiffs-Appellants,

   v.

IMC GLOBAL OPERATIONS, INC.,
IMC KALIUM CARLSBAD POTASH
COMPANY, and PHILCO
CONSTRUCTION, INC.,

       Defendants-Appellees.

No. 05-2351
(D. of N.M.)
(D.C. No. CIV-03-1354-RCB)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

Jeffrey Bain's surviving wife and son brought a wrongful death suit against

Philco Construction, Inc., IMC Global Operations, Inc., and IMC Kalium

Carlsbad Potash Company for fatal injuries suffered by Bain when a roll of

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

industrial belting was knocked off of a flatbed and killed him.  The IMC entities settled with the Bains prior to trial, leaving only Philco to face trial.

A federal jury sitting in diversity decided the accident was caused by a Philco employee working under the control of IMC at the time of the accident. Under New Mexico law, such a finding insulated Philco from wrongful death liability.  The Bains challenge the district court's interpretation of New Mexico law, arguing that the court erred in instructing the jury as to the elements of their claim.

On appeal, our disposition of this case turns on the following question of New Mexico law: *whether an employer must demonstrate it relinquished control of its employee to another employer to escape liability for the employee's negligence?* We find the district court's interpretation of New Mexico law correct, and that it accurately instructed the jury.

Having jurisdiction pursuant to 28 U.S.C. § 1229, we AFFIRM.

## I.  Background

*The Accident.*  IMC owned and operated a potash mine outside Carlsbad, New Mexico.  IMC retained Philco Construction, Inc., an independent contractor, to construct a warehouse and other plant facilities at the IMC mine site.  Jeffrey Bain was employed by a third company at the time as a delivery driver.  As part of his duties, he delivered two rolls of industrial belting to the IMC site for use in IMC's mining operations.

When Bain arrived at the work site, an IMC employee, Amos Urquidez, began helping Bain unload the belting from a flatbed trailer with a forklift. But when James Frintz, an employee of Philco, happened on the scene with a different forklift, the men decided to unload the belting using Frintz's forklift. In the process, Frintz accidentally knocked one of the two rolls of belting from the flatbed with his forklift. The belting rolled onto Bain, resulting in injuries that led to his death.

*The Trial.* Bain's surviving wife and son brought a diversity suit for wrongful death against IMC and Philco in the District of New Mexico. They alleged independent acts of negligence by IMC and Philco caused Bain's death. Prior to trial, the Bains reached a settlement with IMC, and the case proceeded to trial against Philco.

Philco's trial defense was threefold. It argued (1) Frintz was not negligent in knocking the belting onto Bain; (2) Bain was contributorily negligent; and (3) under New Mexico law, Frintz was a "special employee" of IMC at the time of the accident so that any negligence attributable to him should be imputed to IMC, not Philco.[1] At trial, the Bains conceded the belting was strictly for IMC's use

---

[1] According to the jury instruction used at trial, a "special employee" arises from the circumstances of the employment relationship:

> A "special employer" is one which borrows the employee of another to perform work for its benefit, even if the employee is borrowed for a limited period of time, and the "special employer" has the right to
>
> (continued...)

and not for any construction work performed by Philco. In addition, Mr. Urquidez testified that he had "absolute and complete authority for all facets of the unloading process." J. App. at 377. The jury found Frintz a special employee of IMC at the time of the accident, and the court entered judgment in favor of Philco.

*The Jury Instructions.* On appeal, the Bains challenge two of the district court's instructions to the jury, one tendered to the jury and one requested but refused.

The first challenge arises from the language of the verdict form. The district court instructed the jury as to the definition of a special employee under New Mexico law. It then submitted the following question on the verdict form: "Was Frintz an employee of Philco Construction, Inc. or was he a 'special employee' of IMC at the time of the accident?" J. App. at 204. The Bains objected to the either/or nature of the instruction, arguing Frintz could at the same time be an employee of Philco *and* a special employee of IMC. According to the Bains, under this dual employment theory, if Frintz could be employed by both companies at the time of the accident, the finding that he was a special employee

---

[1](...continued)
control the manner in which the details of the work are to be done, even though the right of control may not be exercised. An employee borrowed under these circumstances is called a "special employee."

J. App. at 180.

-4-

of IMC would not absolve Philco of liability since Philco could remain liable as a second employer of Frintz during the accident. Without the dual employment theory available, the jury's conclusion that Frintz was IMC's special employee meant Frintz was not employed by Philco at the time of the accident; therefore, Philco shared no liability for the accident. The Bains' objection to the either/or question was overruled.

The Bains also objected to the district court's exclusion of a proffered jury instruction based on the dual employment theory. The Bains wanted the district court to instruct the jury, ". . . in cases such as this, the entity raising the defense of special employee must also show that such workman's status as a general employee of the defendant had temporarily ceased and negative the fact that the employee was the servant of both employers at the time of the accident in order to prevail." J. App. at 158. They argued that New Mexico law required the jury find Philco had relinquished control of Frintz in order for Philco to escape liability under the special employee defense. The district court omitted this instruction over the Bains' objection, concluding New Mexico law did not require a factual determination that the employee had ceased working for the primary employer at the time of the negligence.

## II. Discussion

On appeal, the Bains seek remand to the district court for a new trial. They claim the district court erred in failing to craft jury instructions and a verdict form

that represent both (1) a relinquishment requirement when using the special employee defense and (2) the dual employment theory. They have also filed a motion to certify the legal questions in this appeal to the New Mexico Supreme Court.[2]

We review *de novo* a district court's jury instructions when objection was made to the challenged instruction at trial.[3] *Osteguin v. S. Pac. Transp. Co.*, 144 F.3d 1293, 1295 (10th Cir. 1998). Challenges to a judge's decision to give or withhold a particular jury instruction are reviewed for abuse of discretion. *See Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175 (10th Cir. 2005). "Because verdict forms are essentially instructions to the jury," we apply the same standard as we would to jury instructions. *See United States v. Jackson*, 213 F.3d 1269, 1285 (10th Cir. 2000), rev'd on other grounds, 531 U.S. 1033 (2000). Under these standards of review, we review the district court's jury verdict form *de novo* and its decision not to include the Bains' proffered instruction for an abuse of discretion.

---

[2] We deny the motion to certify. The issues of state law are not exceedingly complex or unsettled. Moreover, the Bains chose a federal forum when their claims could have been brought in the New Mexico courts in the first instance.

[3] Philco claims insufficient objections were made to preserve *de novo* review for the jury instructions, but we conclude the record was adequate to demonstrate the basis of the Bains' objection and their preferred alternatives. *See* J. App. at 584–585; *see also* J. App. at 556–559, 572–577.

In addition, we review the district court's interpretation and determination of state law *de novo*. *Freightquote.com v. Hartford Cas. Ins.*, 397 F.3d 888, 892 (10th Cir. 2005). "Where the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue." *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006) (internal quotations omitted); *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).

### A. New Mexico's Special Employee Defense

Philco's principal trial defense was that Frintz was under the control of IMC at the time of the accident. Under New Mexico employment law, an employer may be sued only for employee torts committed within the scope of employment. *Monett v. Dona Ana County Sheriff's Posse*, 840 P.2d 599, 603 (N.M. Ct. App. 1992); Restatement (Second) of Agency § 219(1) (1957) ("A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.").

But, "[a]s a general rule, an employer is not liable under *respondeat superior* for an injury negligently caused by a[n employee] if the [employee] is not acting at the time as the [employee] of that employer, and the evidence shows that the employee has been loaned to the service of another who controls the manner and details of the employee's work." *Los Ranchitos v. Tierra Grande*, 861 P.2d 263, 267 (N.M. Ct. App.1993). This is known as the special employee defense.

Under this defense, the employee's primary employer is not liable for negligent conduct where the employee was temporarily in the employ of another employer at the time of the accident.

To establish a special employee relationship, New Mexico cases require two findings of fact: *One*, for which employer is work being performed at the time of the tortious conduct, and *two*, which employer had the power to control the work performed and the conduct of the employee. *Dunham v. Walker*, 288 P.2d 684, 689 (N.M. 1955); *see also Wuertz v. Howard*, 421 P.2d 441 (N.M. 1966).

The district court tendered this two-part test to the jury. The Bains argue, however, that the test applies only when *workers compensation* claims are involved. Outside the workers compensation context, as is the case here, they contend New Mexico case law requires a tripartite finding to establish the special employee defense. They argue an additional element of *relinquishment* by the primary employer is necessary—not only was the employee under the control of another employer and performing work for that employer, but also that the primary employer relinquished control of its employee, relying on our decision in *Jones v. George F. Getty Oil*, 92 F.2d 255 (10th Cir. 1937).

We disagree that the New Mexico courts have adopted a relinquishment requirement as part of the special employee defense. In *Jones*, we addressed the question of whether employees temporarily borrowed by another employer under

the tenets of agency law, so-called "special" employees, were covered by New Mexico's workers compensation statute. We answered in the affirmative, concluding that the special employer's "sole liability to [the injured worker] is under the New Mexico Compensation Act; no common-law liability having application" because of the preemption of common-law suits provided by workers compensation. *Id.* at 258.

Our decision in *Jones* was notable because it was the first reported case that addressed the special employee defense under New Mexico law. The Bains argue that *Jones* embodies a relinquishment element for cases outside the workers compensation context that New Mexico courts would adopt if presented the opportunity.[4]

In the seventy years since *Jones*, a substantial body of case law on the special employee defense has been developed by the New Mexico courts. The New Mexico courts first adopted the two-part test laid out above, with its focus on for whom the work is done and who controls the work, in *Dunham v. Walker*, 288 P.2d 684, 689 (N.M. 1955) (citing *Jones*, 92 F.2d at 258). Many subsequent cases have reaffirmed this rule. *See, e.g., Shipman v. Macco Corp.*, 392 P.2d 9 (N.M.

---

[4] By demonstrating relinquishment, the employer would sever the agency relationship necessary to *respondeat superior* liability by showing the employee was not working within the scope of his employment at the time of the negligence. Under this theory, without a showing of relinquishment both the special employer and the defendant employer could be directing the employee—leaving both susceptible to *respondeat superior* liability.

1964)*; Wuertz v. Howard*, 421 P.2d 441 (N.M. 1966); *Barger v. Ford Sales Co.*, 546 P.2d 873 (N.M. Ct. App. 1976); *Fresquez v. Sw. Indus. Contractors & Riggers*, 554 P.2d 986 (N.M. Ct. App. 1976).

We must ask whether New Mexico law then left the door open for an additional relinquishment requirement in cases where workers compensation preemption does not apply as the Bains contend. The answer to that question is no.

In our view, the New Mexico Supreme Court rejected the relinquishment requirement outside the workers compensation context in *Weese v. Stoddard*, 312 P.2d 545 (N.M. 1956). There, a local American Legion post helped construct a refreshment stand for use at a rodeo. The stand was to be operated by a separate and distinct sister organization, the Women's Auxiliary. The American Legion loaned one of its members, Mr. Stoddard, to the Auxiliary to help with heavy labor chores. An Auxiliary member asked Stoddard to move a truck that was supporting a beam attached to a tarpaulin sheltering the refreshment stand from the wind and sun. As Stoddard moved the truck, the beam fell upon plaintiff Bertha Weese of the Auxiliary and injured her. Weese sued both Stoddard and the American Legion.

In assessing the scope of the special employee defense, the court used the two-part test adopted in *Dunham* to determine whether the Women's Auxiliary or

the American Legion controlled and directed Stoddard's work. After finding

Stoddard a special agent of the Women's Auxiliary, the court decided special

agency alone (without relinquishment) was sufficient to sever the American

Legion's *respondeat superior* liability for Weese's injury. While the case

involved a special agent rather than a special employee, the court made clear the

analysis was the same by using the two-part test established in *Dunham* for special

employees.[5]

The Bains seek to distinguish *Weese* by arguing it is really a workers

compensation case and should not be applied outside that specific context.

Unfortunately for the Bains, there is nothing in *Weese* to narrow its holding in that

fashion. First of all, the New Mexico Supreme Court plainly found *respondeat*

*superior* inapplicable because the agency relationship between the defendant

employer and tortfeasor had been severed by the special employee doctrine. The

court no where relied on workers compensation preemption to support this

rationale. In fact, citing to an agency treatise and the nature of the agency

relationship, the court explained its holding to the contrary:

> [I]n determining whether, in respect of a particular act, a servant, in the
> general employment of one person, who has been loaned for the time being
> to another is the servant of the original employer or of the person whom he
> has been loaned, the test is whether in the particular service which he is
> engaged to perform, the servant *continues liable to the direction and*

───────────────────

    [5] The court even cited to our *Jones* decision as an illustration of the
application of the test. *Weese*, 312 P.2d at 547–48.

*control of his general employer or becomes subject to that of the person to whom he is lent.*

*Id.* at 547 (citation omitted) (emphasis added).

Secondly, while *Weese* cites to some workers compensation cases for its agency proposition, it also cites to numerous non-workers compensation cases and an agency treatise that places no reliance whatsoever upon workers compensation for its analysis. *Id.* at 547–48 (citing to *Finegan v. H.C. & A.I. Piercy Contracting Co.*, 189 A.D. 699 (1919); *Issacs v. Prince & Wilds*, 133 Miss. 195 (1923); *Denton v. Yazoo & M.V.R. Co.*, 284 U.S. 305 (1931); 35 Am. Jur. (Master and Servant) § 541). The special employee defense in *Weese* is solely premised on severing *respondeat superior* liability for the primary employer rather than in establishing workers compensation preemption.

Although occurring in the workers compensation context, *Wuertz*, 421 P.2d 441, also undermines the notion that New Mexico courts would adopt a relinquishment requirement if given the chance. In *Wuertz*, the New Mexico Supreme Court had an opportunity to make it more difficult for an employer to use the special employee defense by adding a consent exception to the defense. Instead of doing so, the court cited to the *Weese* decision for the proposition that even though the general employer consented to his employee helping a special employer, the special employee defense still applied. *Id.* at 443.

-12-

In sum, we cannot ignore the clarity of logic and reasoning with which the New Mexico Supreme Court ignored the relinquishment requirement outside the workers compensation context in *Weese* and opted against reducing the availability of the special employee defense in *Wuertz*. Without a relinquishment requirement, the two-part test for establishing the special employee defense that the district court used in the jury instructions correctly stated New Mexico law.

Accordingly, the district court did not abuse its discretion in withholding the Bains' requested instruction on relinquishment.

## B. Dual Employment

The Bains also object to the either/or nature of the jury verdict form: "Was Frintz an employee of Philco Construction, Inc. or was he a 'special employee' of IMC at the time of the accident?" J. App. at 204. They claim it ignored New Mexico's recognition of dual employment and allowed Philco to escape liability through the special employee defense without consideration of whether Frintz might remain in Philco's employ at the same time. We agree that New Mexico law allowed the Bains to assert a dual employment theory, but even so, it would not have changed the outcome of trial.

New Mexico courts recognize dual employment. *Rivera v. Sagebrush Sales*, 884 P.2d 832, 834 (N.M. Ct. App. 1994) ("Under certain conditions, both the general and special employer are liable for workers' compensation."); *Street v.*

*Alpha Constr. Servs.*, 143 P.3d 187, 191 (N.M. Ct. App. 2006) (Kennedy, J. dissenting) ("[W]orkers can have multiple employers, each of which is immune from suit" due to workers compensation preemption.).[6] Dual employment is especially relevant in co-employee workers compensation cases where the defendant employer and the special employer are both seeking insulation from liability or where the victim seeks benefits from both employers when one of them is unable to fully cover the workers compensation expenses. *See* 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 67.01[1] (2006).

New Mexico law also recognizes dual employment outside the workers compensation context. As the New Mexico Supreme Court noted in *Weese*, "if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he has been lent, although he remains the general servant of the person who lent him." *Weese*, 312 P.2d at 547 (citing 35 Am. Jur. (Master and Servant) § 541).

But by recognizing dual employment while simultaneously rejecting a relinquishment requirement, the *Weese* court made clear that dual employment does not matter for purposes of *respondeat superior* liability. The defendant employer escapes liability by demonstrating the tortfeasor was the special employee of

---

[6] Both *Rivera* and *Street* are workers compensation cases, but that does not undermine their relevance as it did when we analyzed the relinquishment requirement above. Workers compensation preemption has no logical effect on whether an employee could have two employers.

another at the time of the negligent conduct regardless of whether the tortfeasor also remained an employee of the defendant.

The Bains argue that under dual employment theory Frintz could still have been acting within the scope of his employment with Philco at the time of the accident, making Philco liable under *Rivera*. The Bains are correct that New Mexico law recognizes dual employment. In the circumstances here, however, it is obvious that the district court's failure to craft a different verdict form did not matter. If the jury had been presented with and chosen the option requested by the Bains, *i.e.*, Frintz was both the special employee of IMC and the general employee of Philco, then Philco would still remain immune from liability. As *Weese* makes clear, a determination of special employment is the *sole* finding required to insulate the primary employer. A finding of dual employment in this case would necessarily also include the required finding of special employment by IMC—thereby sheltering Philco from liability for Frintz's negligence.

Accordingly, the district court's instructions on dual employment did not affect the verdict.

### III. Conclusion

For these reasons, we AFFIRM the district court. We also DENY the motion

to certify questions of state law to the New Mexico courts.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge